### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DEWAYNE SPAN,

      Petitioner,

v.

THOMAS BELL,

      Respondent.

CASE NO. 2:10-13835
HONORABLE PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

_____/

### OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS; (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS

Dewayne Span, ("petitioner"), presently incarcerated at the Saginaw Correctional Facility in Freeland, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for second-degree murder, M.CL.A. 750.317; felon in possession of a firearm, M.C.L.A. 750.224f; and possession of a firearm in the commission of a felony, M.C.L.A. 750.227b. For the reasons stated below, the application for a writ of habeas corpus is DENIED WITH PREJUDICE.

## I. BACKGROUND

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court.

This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th

Cir. 2009):

Defendant's convictions arise from evidence that he shot and killed Tywan Lawrence outside a bar on November 11, 2004. The victim's brother testified that he and the victim were friends of defendant, who used the nickname "P-Dub." Domonique Washington, the mother of the victim's daughter, identified defendant as the shooter. Washington testified that she did not then know defendant's name, but knew that he used something like "Dub" as a nickname and recognized him from their prior encounters when she was with the victim. Washington met the victim at a bar at about 11:30 p.m. on November 11, 2004. After the victim left to meet someone else, defendant made a crude remark to Washington and pressed his body against her. When the victim rejoined Washington, he asked Washington if someone said something disrespectful to her. Washington did not tell the victim what defendant had done. Later, as the victim and Washington were leaving the bar, the victim argued with defendant. After the argument ended, the victim and Washington walked across the street toward the victim's car. Defendant appeared and pushed the victim from behind. They argued until Washington pulled the victim back in the direction of the bar. While Washington was trying to phone her cousin, the victim started walking back toward his car. Defendant appeared and struck the victim on the head with what appeared to be the butt of a gun. Defendant then shot the victim twice while the victim was lying on his back. Another prosecution witness, Tyree McAfee, indicated that he did not want to testify, but stated that he witnessed the incident in which the victim, whom he considered a brother, was shot. McAfee testified that he had known of defendant, in passing, for about ten years and that the person with the gun looked like defendant. Although he identified defendant in a photographic lineup, McAfee testified that he could be wrong. McAfee said something like, "he looked like that guy right there" when identifying defendant's photograph.

Detroit Police Lieutenant Christopher Vintevoghel disputed McAfee's claim that he only made a qualified identification of defendant's photograph. Lieutenant Vintevoghel testified that McAfee did not hesitate to identify defendant's photograph, but was reluctant to become involved in the matter. According to Lieutenant Vintevoghel, McAfee indicated that "everybody knew each other in this instance" when making his identification. The police did not find the weapon used in the shooting, but retrieved five .45 caliber shell casings from the scene of the shooting and all were fired from the same weapon.

Defendant presented an alibi defense supported by the testimony of his girlfriend, Kenya Carter, who claimed that defendant was at home with her and their children at the time of the shooting. Defendant also presented evidence that Washington did not witness the shooting. Branden Smith, who considered himself to be a friend of both the victim and defendant, testified that he was at the bar on the night of the

2

shooting. He did not see defendant, but observed that the victim had a .45 caliber handgun, which was later possessed by a friend of the victim known to Smith as "Skip." Smith also saw Washington. He testified that Washington was inside the bar at the time that gunshots were fired. Another defense witness, Ramone Griffin, testified that Washington told her in a phone conversation after the shooting that she did not know who shot her baby's father. In rebuttal, Washington testified that she did not know Griffin or tell anyone that she did not know who killed the victim.

*People v. Span,* No. 264030, * 1-2 (Mich.Ct.App. January 4, 2007).

Petitioner's conviction was affirmed on appeal. *Id.; lv. den.* 478 Mich. 926, 732 N.W.2d 889 (2007).

Petitioner then filed a post-conviction motion for relief from judgment with the trial court, which was denied by the trial court. *People v. Span,* No. 05-000510-01-FC (Wayne County Circuit Court, September 17, 2008); *reconsideration den.* December 11, 2008. The Michigan appellate courts denied petitioner leave to appeal. *People v. Span*, No. 294191 (Mich.Ct.App. December 17, 2009); *lv. den.* 488 Mich. 852, 787 N.W.2d 500 (2010). [1]

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court denied petitioner any semblance of a fair trial by constantly berating defense counsel in front of the jury, and by perpetually interfering with the defense's examination of witnesses. US Const Ams V, VI, XIV; Mich Const 1963, Art I, Sec 17.

II. The trial judge pierced the veil of impartiality by constantly berating defense counsel in front of the jury throughout the entire trial.

---

[1] While his post-conviction motion was pending in the state courts, petitioner filed a "protective" petition for writ of habeas corpus, in which he sought to have this Court hold his petition in abeyance while he completed state post-conviction proceedings. This Court denied petitioner's request and dismissed the petition without prejudice on the ground that petitioner had failed to exhaust all of his claims in the state courts and that it was unnecessary to hold the petition in abeyance while petitioner pursued state post-conviction remedies because petitioner had sufficient time remaining under the one year statute of limitations contained in 28 U.S.C. § 2244(d) to file a new petition for writ of habeas corpus with the federal court following the completion of his state post-conviction proceedings. *See Span v. Lafler*, U.S.D.C. No. 09-CV-13513; 2009 WL 2960398 (E.D. Mich. September 14, 2009).

III. The trial court violated petitioner's Confrontation Clause rights by refusing to permit re-cross of the res gestae witness and the need to rebut the prosecutor's hearsay objection.

IV. The prosecutor denied petitioner a fair trial by disparaging petitioner, the defense, and petitioner's attorney, accusing him of deliberatively deceiving the jury. US Const Am V, VI, XIV. Mich Const 1963, Art 1, Sec 17.

V. Petitioner was denied due process, equal protection, and his right to a fair trial by the denial of funds to hire an identification expert. US Const Am VI, XIV, Mich Const 1963, Art 1, Sec 17.

VI. The police and prosecutor failed to disclose exculpatory evidence which denied [Petitioner] due process of law and a fair trial; this exculpatory evidence obtained after [Petitioner's] conviction mandates a new trial and/or a remand for a Brady hearing. US Const Ams VI; XIV; 1963 Const Art 1, Sec 17, 20.

VII. Petitioner was denied his state and federal due process rights where his conviction was obtained on false and misleading sworn testimony elicited by the People. US Const Ams VI; XIV; 1963 Const Art 1, Sec 17, 20.

VIII. [Petitioner] was denied his constitutional right to effective assistance of counsel at trial and appellate counsel did not raise this meritorious issue in his appeal of right. US Const Am VI, Const 1963 Art 1, Sec 20. Therefore, he is entitled to a hearing pursuant to *People v. Ginther*, 390 Mich 436; 202 NW2d 922 (1973) and or a new trial.

A. [Petitioner] was denied his right to the effective assistance of counsel where defense counsel failed to seek assistance in the production of res gestae witnesses who had exculpatory evidence and would have discredited the People's eyewitness Dominique Washington.

B. Trial counsel's failure to thoroughly cross-examine the critical prosecution witnesses at trial constitutes ineffective assistance of counsel under the Sixth Amendment and this omission was so substantial that it could have changed the outcome of the trial.

C. Defense counsel's failure to properly impeach eyewitness Dominique Washington with phone records that were available constitutes ineffective assistance of counsel.

IX. [Petitioner] was denied his equal protection rights and his right to an impartial jury when the prosecutor used peremptory challenges to strike five African-American jurors from the jury panel. US Const Ams VI; XIV; 1963 Const Art 1, Sec 17, 20.

4

X. The trial court's failure to ascertain on the record whether [Petitioner] intelligently and knowingly waived his absolute right to testify requires a new trial.

XI. The cumulative effect of the foregoing errors denied [Petitioner] a fair trial in violation of due process of law and requires reversal.

XII. [Petitioner] is entitled to relief from judgment where he is actually innocent of the murder charge and his appellate counsel denied him of his right to effective assistance of counsel in violation of both federal and state constitutions. US Const Ams VI, XIV; 1963 Const Art 1, Sec 20. [2]

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable

---

[2] Petitioner originally filed a petition for writ of habeas corpus, in which he sought habeas relief on thirteen grounds. On September 27, 2011, this Court granted petitioner's motion to amend his petition for writ of habeas corpus to delete his eleventh claim from his original petition. Petitioner has filed an amended habeas petition, in which the twelfth and thirteenth claims that he raised in his original petition have been renumbered as his eleventh and twelfth claims.

5

application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,*

131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.  Finally, in reviewing petitioner's claims, this Court must remember that under the federal constitution, petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

## III.  DISCUSSION

### A.  Claims # 3-4 and 6-11.  The procedurally defaulted claims.

The Court will discuss petitioner's procedurally defaulted claims first for judicial economy and clarity.  Respondent claims that petitioner's third, fourth, and sixth through

eleventh claims are procedurally defaulted for various reasons. [3]

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice". *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Respondent contends that petitioner's third claim involving the trial court's refusal to permit him to recall Washington as a witness and his fourth claim alleging prosecutorial misconduct are procedurally defaulted because petitioner failed to preserve the issues at trial and as a result, the Michigan Court of Appeals reviewed the claims for plain error only. *Span*, No. 264030, Slip. Op. at * 4-5.

In this case, the Michigan Court of Appeals clearly indicated that by failing to move to

---

[3] Respondent also claims that a portion of petitioner's judicial misconduct claim is procedurally defaulted, but because the procedurally defaulted judicial misconduct claim is similar to the non-defaulted judicial misconduct claims, it would be easier to address the merits of that defaulted claim while addressing the merits of the non-defaulted judicial misconduct claims.

recall Domonique Washington as a witness, petitioner had failed to preserve his Confrontation Clause claim. The Michigan Court of Appeals likewise concluded that because petitioner had failed to object at trial, petitioner had not preserved his prosecutorial misconduct claim. The fact that the Michigan Court of Appeals engaged in plain error review of petitioner's right of confrontation and prosecutorial misconduct claims does not constitute a waiver of the state procedural default. *Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir. 2000). Instead, this Court should view the Michigan Court of Appeals' review of petitioner's third and fourth claims for plain error as enforcement of the procedural default. *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001). In addition, the mere fact that the Michigan Court of Appeals also discussed the merits of petitioner's third and fourth claims does not mean that these claims were not procedurally defaulted. A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). Petitioner's third and fourth claims are procedurally defaulted.

In the present case, petitioner has offered no reasons for his failure to preserve his right of confrontation and prosecutorial misconduct claims. Although ineffective assistance of counsel may constitute cause to excuse a procedural default, that claim itself must be exhausted in the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Although petitioner raised several ineffective assistance of counsel claims in his post-conviction motion, he never raised a claim that trial counsel was ineffective for failing to move to recall Washington as a witness or for failing to object to the prosecutor's alleged misconduct. Because petitioner never raised in the Michigan courts a specific claim about trial counsel's failure to preserve his

9

Confrontation Clause claim or to object to the alleged prosecutorial misconduct, any alleged ineffectiveness of counsel cannot constitute cause to excuse petitioner's default with respect to his third and fourth claims. *See Wolfe v. Bock,* 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006). Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding his third and fourth claims. *Smith,* 477 U.S. at 533.

Respondent contends that petitioner's sixth through eleventh claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." M.C.R. 6.508(D)(3)(b)(i). M.C.R. 6.508(D)(3) further indicates that: "[T]he court may waive the 'good cause' requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime."

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed,* 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but

10

simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

In the present case, the Wayne County Circuit Court judge, in denying petitioner's post-conviction motion, quoted verbatim M.C.R. 6.508(D) at the beginning of his opinion, including the "cause and prejudice" standard under M.C.R. 6.508(D)(3). *Span,* No. 05-000510-01-FC, Slip. Op. at * 2-3. After discussing petitioner's claims at length, *Id.,* pp. 3-17, the trial judge addressed petitioner's contention that he was actually innocent of the crimes. The judge again recited verbatim the "cause and prejudice" standard contained in M.C.R. 6.508(D)(3). *Id.,* at * 17-18. The Court then made the following remarks:

To overcome the burden of MCR 6.508(D), the defendant asserts that his appellate

11

counsel provided ineffective assistance of counsel for failing to raise the various issues discussed above, that this failure by appellate counsel constitutes good cause, and that he was actually prejudiced by this failure because he is actually innocent.

In the instant case, the defendant has failed to convince the Court that but for the alleged errors, he would not have been convicted or that a miscarriage of justice has occurred.

The Court believes that the defendant received a fair trial and post-conviction review of his case on appeal. As was discussed at length, the defendant has failed to raise any issue that either undermines the confidence of the verdict or the judicial process. There is no illuminating revelation in the defendant's motion that points to his innocence. None of the so called newly discovered evidence is newly discovered, nor does it exonerate him. Further, decisions of both trial counsel and appellate counsel not to pursue these matters may very well have been based on a determination of the legal merits, rather than defendant's contention of incompetence or oversight.

For the foregoing reasons, defendant's motion for relief from judgment is denied.

*Id.* at * 18.

In the present case, the judge clearly invoked the provisions of M.C.R. 6.508(D)(3) to deny petitioner's post-conviction claims. First, the judge, not once, but twice in his opinion denying post-conviction relief indicated that pursuant to M.C.R. 6.508(D)(3), a defendant cannot obtain post-conviction relief on grounds that could have been raised on direct appeal unless the defendant can show good cause for failing to previously raise the claim and actual prejudice from the irregularities. The trial judge's explicit mention of the cause and prejudice standard contained in M.C.R. 6.508(D)(3) within his opinion in which he denied petitioner's post-conviction motion clearly shows that the judge relied on this court rule to deny petitioner's post-conviction claims. *See Moritz v. Woods,* 844 F. Supp. 2d 831, 838 (E.D. Mich. 2012)(claims procedurally defaulted pursuant to M.C.R. 6.508(D)(3) when the trial court rejected petitioner's motion for relief from judgment, by noting that pursuant to M.C.R.

12

6.508(D)(3), a court cannot grant postconviction relief if the motion alleges grounds that could have been raised on appeal, unless the defendant can show good cause for failing to previously raise the claim and actual prejudice from the irregularities).

Secondly, the comments made by the judge at the end of the opinion, coming as they did right after his second verbatim recitation of M.C.R. 6.508(D)(3), establish that the judge found that petitioner had failed to satisfy the cause and prejudice requirement of M.C.R. 6.508(D)(3) for obtaining post-conviction relief. The judge explicitly noted that petitioner had attempted to establish cause for failing to raise his claims on his direct appeal by arguing that his appellate counsel had been ineffective for failing to raise the issues that petitioner had presented in his post-conviction motion. The trial judge then concluded that petitioner had failed to show that appellate counsel had been ineffective in failing to raise his post-conviction claims on his direct appeal. The judge further noted that petitioner claimed that he was prejudiced by appellate counsel's failure to raise these claims because he was actually innocent. The judge then concluded that petitioner had failed to convince him that "but for the alleged errors, he would not have been convicted or that a miscarriage of justice has occurred." This language is almost identical to the actual prejudice requirement of M.C.R. 6.508(D)(3)(b)(i), in which a defendant is required to show that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." Finally, by ruling that petitioner had failed to present new evidence that he was actually innocent, the trial judge was clearly rejecting petitioner's argument that he was actually innocent, so as to waive the "cause and prejudice" requirement of M.C.R. 6.508(D)(3). This Court concludes that the Wayne County Circuit Court clearly relied on the cause and prejudice requirement contained in M.C.R. 6.508(D)(3) to deny petitioner relief on

13

his claims.

Because the trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), petitioner's post-conviction claims are procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F.3d 284, 292-93 (6th Cir. 2007); *See also Howard v. Bouchard,* 405 F.3d 459, 477 (6th Cir. 2005). The fact that the trial judge may have also discussed the merits of petitioner's claims in addition to invoking the provisions of M.C.R. 6.508(D)(3) to reject petitioner's claims does not alter this analysis. *See Malone v. Sherman,* 412 F. App'x. 803, 804 (6th Cir. 2011). A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys,* 929 F.2d at 267. Petitioner's sixth through eleventh claims are procedurally defaulted. [4]

With respect to his post-conviction claims, petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client

---

[4] Petitioner could not have procedurally defaulted the portion of his eighth claim which alleges the ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette,* 624 F.3d at 291. However, for the reasons stated below, petitioner is not entitled to habeas relief on this claim.

would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

*Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

Notwithstanding *Barnes*, it is still possible to bring a *Strickland* [*v. Washington,* 466 U.S. 668 (1984)] claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent."

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Appellate counsel filed a thirty three page appellate brief which raised the first five claims that petitioner has presented in his petition. [See Dkt. # 7-10]. Petitioner has not shown that appellate counsel's strategy in presenting these five claims and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated by the Wayne County Circuit Court in rejecting petitioner's post-conviction claims and by the Assistant Michigan Attorney General in her answer to the petition for writ of habeas corpus, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners." Because the defaulted claims are not "dead bang winners," petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano,* 228 F.3d 674, 682-83 (6th Cir. 2000).

Moreover, because these post-conviction claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by petitioner. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones,* 615 F.3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

In the present case, petitioner has failed to show cause to excuse his default of the claims that he raised for the first time on state post-conviction review. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray,* 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any

16

assertion of innocence which would allow this Court to consider his third, fourth, and his sixth through eleventh claims as a ground for a writ of habeas corpus in spite of the procedural default. Although petitioner has presented evidence which he claims would impeach the credibility of Domonique Washington, impeachment evidence does not provide sufficient evidence of actual innocence to support a free-standing innocence claim. *See Calderon v. Thompson*, 523 U.S. 538, 563 (1998)(newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence); *See also Harris v. Stegall,* 157 F. Supp. 2d 743, 750-51 (E.D. Mich. 2001)(State trial court's allegedly erroneous exclusion of victim's statements to police was insufficient to justify invoking fundamental miscarriage of justice exception to procedural default rule on federal habeas review when statements were merely impeaching and did not provide basis for any claim of actual innocence).

Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's procedurally defaulted claims on the merits. *See Johnson v. Smith*, 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002).

Finally, assuming that petitioner had established cause for the default of his claims, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F.3d 883, 891 (6th Cir. 2007). For the reasons stated by the Michigan Court of Appeals in rejecting

17

petitioner's third and fourth claims on direct appeal, by the Wayne County Circuit Court judge in rejecting petitioner's sixth through eleventh claims when he denied petitioner's post-conviction motion, and by the Assistant Michigan Attorney General in her answer to the petition for writ of habeas corpus, petitioner has failed to show that his procedurally defaulted claims have any merit. In particular, the reasons justifying the denial of petitioner's procedurally defaulted claims were "ably articulated by the" Michigan Court of Appeals in rejecting petitioner's third and fourth claims on direct review and by the Wayne County Circuit Court in rejecting petitioner's sixth through eleventh claims on post-conviction review. Therefore, "the issuance of a full written opinion" by this Court regarding these claims "would be duplicative and serve no useful, jurisprudential purpose." *See e.g. Bason v. Yukins,* 328 F. App'x. 323, 324 (6th Cir. 2009). Petitioner is not entitled to habeas relief on his procedurally defaulted claims.

### B. Claims # 1 and # 2. The judicial misconduct claims.

In his first and second related claims, petitioner alleges that he was deprived of a fair trial because the judge "pierced the veil" of judicial impartiality by belittling defense counsel in front of the jury and interfering with counsel's questioning of witnesses.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). The right to an impartial judge is a right whose deprivation a state prisoner may complain of in a federal habeas corpus proceeding. *Tyson v. Trigg*, 50 F.3d 436, 438 (7th Cir. 1995)(citing to *Turner v. Ohio*, 273 U.S. 510, 523 (1927); *In Re Murchison*, 349 U.S. 133 (1955)). Trial judges have a wide latitude in conducting trials, but they must preserve an attitude of impartiality and scrupulously avoid

18

giving the jury the impression that the judge believes that the defendant is guilty. *Harrington v. State of Iowa*, 109 F.3d 1275, 1280 (8th Cir. 1997); *Brown v. Palmer,* 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005).

However, in reviewing an allegation of judicial misconduct in a habeas corpus petition, a federal court must ask itself whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process. *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995); *Brown v. Palmer,* 358 F. Supp. 2d at 657. To sustain an allegation of bias by a state trial judge as a grounds for habeas relief, a habeas petitioner must factually demonstrate that during the trial the judge assumed an attitude which went further than an expression of his or her personal opinion and impressed the jury as being more than an impartial observer. *Brinlee v. Crisp*, 608 F.2d 839, 852-53 (10th Cir. 1979); *Brown,* 358 F. Supp. 2d at 657. A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a significant degree before habeas relief could be granted. *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985); *Brown,* 358 F. Supp. 2d at 657. The Supreme Court has ruled that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish judicial bias or misconduct. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). "A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune." *Id.*

Petitioner has failed to show that the judge's actions or remarks in this case were inappropriate. In several instances, the judge sustained the prosecutor's objections to defense counsel's questions of various witnesses. Rather than abiding by the trial judge's rulings, defense counsel continued to argue with the judge over his rulings, often using combative

language. The judge became impatient with counsel's attempts to continue arguing after he ruled on the matters. Although the trial judge expressed his impatience and frustration with defense counsel during trial, his remarks were generally in response to defense counsel's combative style and failure to accept the court's direction. Thus, the judge's conduct was not so prejudicial so as to deprive petitioner of a fair trial. *See Todd v. Stegal,* 40 F. App'x. 25, 27 (6th Cir. 2002). In this case, "The reprimands were not out of line, nor were they substantially adverse to [petitioner] himself. There is no showing that the trial judge ever intimated his opinion on the merits of the case." *Id.* at 27. Moreover, any prejudice was also cured by the fact that the judge instructed the jury that his rulings were not evidence and further advised the jurors that if they believed that the judge had an opinion about how they should decide the case, that they should disregard that opinion and that they were the only judges of the facts. (Tr. 6/20/2005, p. 74). *Id.* at 28.

Petitioner further claims that the judge belittled counsel by asking him in front of the jury how long he had practiced law. Although the judge's sarcastic remark was inappropriate, it was isolated. Moreover, in light of "the very high standard articulated in *Liteky*" to obtain relief on a judicial misconduct claim, the Michigan Court of Appeals' rejection of this part of petitioner's claim was not unreasonable, so as to entitle petitioner to habeas relief. *Brandt v. Curtis*, 138 F. App'x. 734, 743 (6th Cir. 2005).

Finally, the judge's request that defense counsel stand up when making an objection and to be respectful to the court did not display judicial partiality. The judge's admonition to defense counsel to stand up when he made an objection and to be respectful to the court did not deprive defendant of a fair trial, since the exchange merely exhibited the judge's annoyance at

20

defense counsel's disrespectful behavior. *See U.S. v. Johnson,* 182 F. App'x. 423, 433 (6th Cir. 2006).

In the present case, petitioner is not entitled to habeas relief, because there was no evidence that the trial court judge belittled defense counsel or demonstrated any bias towards the prosecution. *Brown v. Palmer,* 358 F. Supp. 2d at 657.  Given the evidence presented on this claim, this Court cannot conclude that the trial court judge's comments rendered the trial fundamentally unfair, nor does the Court find that the Michigan Court of Appeals' decision on this issue was contrary to or an unreasonable application of Supreme Court precedent, as to warrant habeas relief. *See Higgins v. Renico,* 362 F. Supp. 2d  904, 924 (E.D. Mich. 2005). Petitioner is not entitled to habeas relief on his first or second claims.

### C. Claim # 5.  The failure to appoint an expert on eyewitness identification.

Petitioner next contends that he was deprived of a fair trial when the trial court refused to appoint an expert witness in eyewitness identification, in order to explain to the jurors the inherent unreliability of eyewitness identifications.

In *Moore v. Tate,* 882 F.2d 1107, 1110-11 (6th Cir. 1989), the Sixth Circuit held that a defendant in a state criminal trial was not denied his constitutional right to a fair trial when the state trial court excluded expert testimony on the reliability of eyewitness identification, finding that the examination and cross-examination of a witness at trial affords a jury an adequate opportunity to assess the reliability of a witness' identification of the defendant.  Although the Sixth Circuit noted that an expert witness' testimony might give jurors another perspective from which to assess an eyewitness' testimony, such testimony was not constitutionally required. *Id.; See also Buell v. Mitchell,* 274 F.3d 337, 359 (6th Cir. 2001)("this court has recognized that a

21

habeas petitioner does not have a constitutional right to the presentation of expert testimony on the reliability of eyewitness identification").

This Court is aware that the Sixth Circuit has subsequently granted habeas relief on the ground that the exclusion of an expert on eyewitness identification deprived the habeas petitioner of a right to present a defense. *See Ferensic v. Birkett,* 501 F.3d 469, 476-77 (6ᵗʰ Cir. 2007). The Sixth Circuit's ruling in that case, however, is not determinative of whether this Court should grant habeas relief from a state court conviction. A federal habeas court may not overrule a state court for holding a view different from its own, under the "contrary to" clause of the Antiterrorism or Effective Death Penalty Act (AEDPA), when the precedent from the Supreme Court is, at best, ambiguous. *See Mitchell v. Esparza,* 540 U.S. 12, 17 (2003). A habeas court may therefore only look at the holdings of the United States Supreme Court as they existed at the time of the relevant state court decision to determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law. *Mitzel v. Tate,* 267 F.3d 524, 530-531 (6th Cir. 2001). A habeas court cannot look to the decisions of this circuit, or other courts of appeals, when deciding whether a state court's decision was contrary to, or an unreasonable application of, clearly established federal law. *Id.* The "clearly established law" requirement contained in § 2254(d)(1) is a codification of the U.S. Supreme Court's antiretroactivity rule enunciated in *Teague v. Lane,* 489 U.S. 288 (1989), which required federal habeas courts to deny habeas relief that was contingent upon a rule of federal law which had not been announced until after the state court conviction became final. *See Williams v. Taylor,* 529 U.S. at 379-80.

This Court notes that there is no clearly established Supreme Court law which requires

22

the appointment of an expert in eyewitness identification. The U.S. Supreme Court precedent that would most closely address petitioner's claim is *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985), where the U.S. Supreme Court held that when an indigent defendant demonstrates to a trial judge that his or her sanity at the time of the commission of the offense is to be a significant factor at trial, the state must assure a criminal defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense.

The Supreme Court, however, has never extended the rule in *Ake* to apply to the appointment of non-psychiatric experts. In *Caldwell v. Mississippi*, 472 U.S. 320, 323, n. 1 (1985), the Supreme Court indicated that given that the petitioner had offered little more than undeveloped assertions that the assistance of a criminal investigator, a fingerprint expert, and a ballistics expert would be beneficial, there was no due process deprivation by the state court judge's denial of these requests. Because the petitioner failed to make such a showing, the Supreme Court indicated that there was "no need to determine as a matter of federal constitutional law what if any showing would have entitled a defendant to assistance of the type here sought." *Id.*

A number of courts have held that a habeas petitioner was not entitled to habeas relief based on a state trial court's failure to appoint an expert on eyewitness identification, because the Supreme Court has yet to extend *Ake* to such non-psychiatric expert witnesses. *See Ford v. Dretke*, 135 F. App'x. 769, 771-72 (5th Cir. 2005)(new rule proposed by habeas petitioner, requiring the appointment of an expert on eyewitness identification, did not fall within one of the exceptions to the rule against the application of a new rule on collateral review); *Jackson v.*

23

*Ylst,* 921 F.2d 882, 886 (9th Cir. 1990)(habeas petitioner's claim that his due process rights were violated when he was denied the appointment of an expert on eyewitness identification proposed a new rule in violation of *Teague,* and therefore could not serve as a basis for federal habeas relief); *Spencer v. Hofbauer,* U.S.D.C. No. 2:06-12133; 2008 WL 324098, * 9 (E.D. Mich. February 6, 2008)(no clearly established Supreme Court law which requires the appointment of an expert in eyewitness identification).

Finally, as the Michigan Court of Appeals noted in rejecting petitioner's claim, *Span,* Slip. Op. at * 7-8, the absence of an expert witness did not prevent petitioner from attacking Washington's eyewitness identification of him as the shooter through cross-examination and argument. The judge also instructed the jurors on the factors that they should consider in determining the reliability of identification testimony. Moreover, the defense at trial was that Washington had lied about being present when the victim was shot. Finally, petitioner presented an alibi defense at trial. Because the jury was provided with the information that allowed them reasonably to assess the credibility of the eyewitness, the state trial court judge's refusal to appoint an expert in eyewitness identification did not deprive petitioner of his right to present his defense. *See e.g. Williams v. Withrow,* 328 F. Supp. 2d 735, 747 (E.D. Mich. 2004). Petitioner is not entitled to relief on his fifth claim.

### E.  Claim # 12.  Petitioner's actual innocence claim is non-cognizable.

In his twelfth claim, petitioner contends that he is entitled to relief because he is actually innocent.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas

24

relief absent an independent constitutional violation occurring in the underlying state criminal

proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation

of the constitution, not to correct errors of fact. *Id., See also Hence v. Smith*, 37 F. Supp.2d 970,

980 (E.D. Mich. 1999). Freestanding claims of actual innocence are not cognizable on federal

habeas review, absent independent allegations of constitutional error at trial. *See Cress v.*

*Palmer,* 484 F.3d 844, 854-55 (6th Cir. 2007)(collecting cases).

Moreover, the Supreme Court's subsequent decision in *House v. Bell*, 547 U.S. 518

(2006) does not alter this Court's adjudication of petitioner's claim, as the Supreme Court again

in that case declined to resolve whether a habeas petitioner may bring a freestanding claim of

actual innocence. *Id.* at 554-55. Although the Supreme Court in *House* noted that "in a capital

case a truly persuasive demonstration of 'actual innocence' made after trial would render the

execution of a defendant unconstitutional, and warrant federal habeas relief if there were no

state avenue open to process such a claim," *Id.* (quoting *Herrera,* 506 U.S. at 417), the Supreme

Court has declined to recognize a freestanding innocence claim in habeas corpus, outside of the

death-penalty context. Petitioner would therefore not be entitled to relief for his twelfth claim

under available Supreme Court precedent. *See Wright v. Stegall*, 247 F. App'x. 709, 711 (6th Cir.

2007).

The Court will deny the petition for writ of habeas corpus. The Court will also deny a

certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make

a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To

demonstrate this denial, the applicant is required to show that reasonable jurists could debate

whether, or agree that, the petition should have been resolved in a different manner, or that the

issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d at 885. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV. CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas

26

corpus.  The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

PAUL D. BORMAN
UNITED STATES DISTRICT COURT

DATED: 12-12-12

27